IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 5:18-CV-420-FL

| | | |
|---|---|---|
| SEARS CONTRACT, INC. United States of America, for the use and benefit of the foregoing, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| SAUER INCORPORATED and FEDERAL INSURANCE COMPANY, | ) ) ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, to transfer venue to the United States District Court for the Middle District of Florida. (DE 17). Plaintiff responded in opposition, and the time for reply has passed. In this posture, the issues raised are ripe for ruling. For the following reasons, the court denies the motion.

**STATEMENT OF THE CASE**

Plaintiff commenced this action pursuant to the Miller Act, 40 U.S.C. §§ 3131 et seq., to recover unpaid amounts for labor and materials it furnished as a subcontractor in connection with the construction of an elementary school at Fort Bragg, North Carolina (the "project"). In amended complaint filed September 6, 2018, plaintiff asserts a claim of breach of contract against defendant Sauer Incorporated ("Sauer"), based on the terms of a subcontract between plaintiff and Sauer, which is the general contractor for the project. Plaintiff also asserts a quantum meruit claim against defendant Sauer, as well as a payment bond claim against defendant Federal Insurance Company

("FIC"), as surety on behalf of defendant Sauer, under the Miller Act, 40 U.S.C. § 3133(b).

Defendants answered on November 9, 2018, including in their answer the instant motion to dismiss, or in the alternative to transfer venue, on the basis that a forum-selection clause in the subcontract requires plaintiff to litigate its claims against them in the Middle District of Florida. Defendants rely upon the subcontract. In opposition, plaintiff contends the forum-selection clause is invalid and that venue is proper in this district.

The court entered case management order on January 7, 2019, under which discovery and mediation shall be completed by September 10, 2019, and dispositive motions shall be filed by October 10, 2019.

## STATEMENT OF FACTS

Plaintiff is a North Carolina corporation in the business of providing commercial drywall and exterior finish construction services, with principal office and place of business in Raleigh, North Carolina. Defendant Sauer is a Florida corporation with its principal office and place of business in Jacksonville, Florida, engaged generally in the construction industry as a general contractor, and a licensed general contractor in North Carolina. Defendant FIC is an Indiana surety company that issued a payment bond on behalf of its principal, Sauer, allegedly binding itself for the payment of any unpaid amounts for labor and materials furnished in connection with the project.

The project is a multi-million-dollar undertaking for the construction and replacement of the Pope-Holbrook Elementary School at Fort Bragg military base. Prior to April 13, 2015, defendant Sauer and the United States Army Corps of Engineers – Savannah District entered into a prime contract (Owner Contract # W91278-12-D-0039-CV01) for the construction of the project.

2

According to the complaint,[1] as required by the Miller Act, 40 U.S.C. § 3131(b)(2), FIC, as surety on behalf of its principal Sauer, duly made, executed and issued Payment Bond No. 8237-94-27 (the "payment bond") to secure payment to those firms performing work and supplying labor and materials to the project, including plaintiff.

On February 20, 2015, defendant Sauer entered into the subcontract with Sears. The initial subcontract sum, subject to adjustment for changes in the scope of work, was $1,945,559.00. The scope of work included: "Gypsum assemblies, metal framing, building insulation, glass fiber reinforced gypsum, and exterior insulation and finish system." (Compl. ¶ 10). According to the complaint, during the course of the project, the scope of work was amended, resulting in an increase of the subcontract price of $91,563.48, from $1,945,559.00 to $2,037,122.48. Plaintiff began work on February 9, 2016 and completed its work on December 18, 2017. To date, Plaintiff has been paid $1,768,744.80.

According to the complaint, plaintiff and Sauer agreed to at least four change orders over the course of the project, and defendant Sauer agreed and was obligated to pay plaintiff for its work under the subcontract. Despite plaintiff's allegedly proper performance of its work on the project, defendant Sauer failed and/or refused to pay plaintiff for the balance due and owing. Plaintiff made repeated demands for payment upon defendant Sauer and, to date, no payment has been made to plaintiff for the balance allegedly due and owing for its work under the subcontract. On January 11, 2018, plaintiff gave notice of its claim on the payment bond to defendant Sauer, defendant FIC, and the U.S. Army Corps of Engineers.

As pertinent herein, the subcontract includes the following provision regarding the venue for

---

[1] Hereinafter, unless otherwise specified, all references to the "complaint" or "Compl." are to the amended complaint (DE 6).

claims and dispute resolution: "Any claim by Subcontractor filed in state or federal court against Sauer and/or Sauer's surety shall only be filed and or resolved in any court within the exclusive venue of Sauer's office address written above." (Subcontract (DE 18-1) at 11).[2] Sauer's office is referenced within the paragraph as "Sauer's Jacksonville, Florida office" (id.), and it is referenced at the start of the subcontract as "11223 Phillips Parkway Drive East[,] Jacksonville, Florida 32256." (id. at 2).

## COURT'S DISCUSSION

A.      Standard of Review

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss a complaint for "improper venue" before pleading an answer. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A transfer of venue under § 1404(a) is "a matter resting in the sound discretion of the District Judge." S. Ry. Co. v. Madden, 235 F.2d 198, 201 (4th Cir. 1956).

B.      Analysis

1. Motion to dismiss under Rule 12(b)(3)

Defendants move to dismiss under Rule 12(b)(3) on the basis that a forum-selection clause in the subcontract requires plaintiff to litigate its claims against them in the Middle District of Florida. Although defendants rely upon an opinion by the United States Court of Appeals for the Fourth Circuit, in Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 549 (4th Cir. 2006),

---

[2] Herein, page numbers in citations to the subcontract are to the page number designated by the court's electronic case filing (ECF) system (e.g., Subcontract (DE 18-1) at 11), and not the page number showing on the face of the document (e.g., "Page 10 of 14").

that a venue objection based upon a forum-selection clause may be asserted under Rule 12(b)(3), the United States Supreme Court more recently has opined to the contrary.

In Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 61 (2013), the Supreme Court concluded that "Rule 12(b)(3) [is] not [a] proper mechanism[] to enforce a forum-selection clause," and "that § 1404(a) . . . provide[s] [the] appropriate enforcement mechanism[.]" The court squarely "reject[ed] petitioner's argument that such a clause may be enforced by a motion to dismiss under . . . Rule 12(b)(3) of the Federal Rules of Civil Procedure," Id. at 52, reasoning that "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." Id. at 55.

The Fourth Circuit has since recognized the applicability of Atlantic Marine, noting that "in Atlantic Marine, the Supreme Court clarified that a party may not seek to enforce a forum-selection clause by moving to dismiss for improper venue." BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 470 (4th Cir. 2018) (emphasis added). Accordingly, it appears that Sucampo Pharmaceuticals has been impliedly abrogated, or at least significantly limited, and that the court must instead follow Atlantic Marine. In accordance therewith, defendants' motion to dismiss under Rule 12(b)(3) is denied, and the court evaluates defendants' venue argument in accordance with § 1404(a).

2. Alternative motion to transfer under § 1404(a)

As noted above, "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Under the federal venue statute generally, venue is proper in "a judicial district

5

in which . . . a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b). Similarly, under the venue provisions of the Miller Act, venue is proper in the "district in which the contract was to be performed and executed." 40 U.S.C. § 3133(b)(3)(B). Based upon these statutory venue provisions, a proper venue for this action is the Eastern District of North Carolina, because it is the location of contract performance and the project.

Nevertheless, "it is settled that parties to a contract may agree in advance to submit to the jurisdiction of a given court." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 11 (1972). Non-jurisdictional requirements of the Miller Act "may be waived by clear and express provisions in the contract between the prime contractor and the subcontractor." U. S. for Use of B's Co. v. Cleveland Elec. Co. of S. C., 373 F.2d 585, 588 (4th Cir. 1967). Although the Fourth Circuit has not addressed the question directly, other circuit courts unanimously have held that the venue provision in the Miller Act "is subject to contractual waiver by a valid forum selection clause." U.S. for Use of B & D Mech. Contractors, Inc. v. St. Paul Mercury Ins. Co., 70 F.3d 1115, 1117 (10th Cir. 1995) (emphasis added) (collecting cases).

Two critical issues thus are raised by the instant motion. The first issue is whether the parties here waived the Miller Act venue rules through a "clear and express" forum-selection clause in favor of the Middle District of Florida. U. S. for Use of B's Co., 373 F.2d at 588. The second issue raised is whether the forum-selection clause is "valid" under the circumstances. U.S. for Use of B & D Mech. Contractors, Inc., 70 F.3d at 1117. The court addresses each issue in turn.

    a.    Ambiguity

Defendants contend that the forum-selection clause in the subcontract provides that venue exclusively shall be in the Middle District of Florida. The clause, however, is not so clear as

6

defendants contend, and it is lacking in key terms normally found in forum-selection provisions enforced in this circuit.

Generally, "forum-selection clauses using geographical limitations permit the case to be filed with any court, whether state or federal, that is located <u>within the contractually described geographical boundary</u>." Bartels by & through Bartels v. Saber Healthcare Grp., LLC, 880 F.3d 668, 676 (4th Cir. 2018) (emphasis added). The forum-selection clause in this instance is ambiguous because it does not describe a geographical boundary. Rather, it specifies an "office address." (Subcontract (DE 18-1) at 11). Unlike other enforceable forum-selection clauses that typically specify venue in a particular county, federal district, or state, the instant clause is ambiguous because the "office address" referenced may signify the street address, the city, the state as a whole, or even the United States, as opposed to some other country.

Comparison to other geographically limited clauses is instructive. For example, in Bartels, 880 F.3d at 671, the Fourth Circuit enforced a forum-selection clause providing that "<u>the county in which the Facility is located</u> shall be the sole and exclusive venue for any dispute between the parties." (emphasis added). In Ferri Contracting Co. v. Town of Masontown, W. Virginia, No. 03-1303, 2003 WL 22244905, at *1 (4th Cir. Sept. 29, 2003), the Fourth Circuit enforced a clause that provided that any litigation with respect to the contract "will be decided in a court of competent jurisdiction <u>within the state in which the OWNER is located</u>." Even in other cases involving construction contracts where parties specify venue in reference to an "office address," as here, additional terms designate clearly the geographical limitation. See, e.g., R P Constr. LLC v. S M C Builders, Inc., No. CV 1:15-2600, 2016 WL 2858961, at *2 (W.D. La. May 12, 2016) ("If Subcontractor is dissatisfied with such decision by [contractor's] management, either party may seek

7

to have the dispute resolved <u>in any court having jurisdiction over</u> [contractor's] office address written above.") (emphasis added); Zahner Hansen Const. Grp., Inc. v. Hotwire Elec., Inc., No. 3-14-1067, 2014 WL 2872212, at *1 (M.D. Tenn. June 24, 2014) ("The exclusive forum for and venue of such litigation shall be [1] <u>in Superior Court</u>, [2] <u>in the state and city noted</u> as the Contractor's office address on page one of this Subcontract.") (emphasis added).

In sum, the instant forum-selection clause is missing key language resulting in its ambiguity. For example, to be enforceable to transfer the case to the Middle District of Florida, it could specify that the sole venue shall be in <u>the county or federal district</u> in which defendant Sauer's office is located. But it does not so specify. Thus, as a threshold matter, the asserted forum-selection clause is not enforceable to mandate venue for this action exclusively in the Middle District of Florida.

b. Invalidity

Independently, and in the alternative to the foregoing, the forum-selection clause is not valid. "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." Atl. Marine Const. Co., 571 U.S. at 63. Such a clause "requires district courts to adjust their usual § 1404(a) analysis" in multiple respects, such as giving plaintiff's choice of forum no weight, disregarding private interests, and disregarding the original venue's choice of law rules. Id. at 63-64. However, the Supreme Court has emphasized that this adjusted "analysis presupposes a contractually valid forum-selection clause." Id. at 62 n.5.

While forum-selection clauses generally are accorded "presumptive validity," this presumption "is not absolute and, therefore, may be overcome by a clear showing that they are unreasonable under the circumstances." Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (quotations omitted). "Choice of forum and law provisions may be found unreasonable if,"

8

among other reasons, "the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum" or "their enforcement would contravene a strong public policy of the forum state." Id. (quotations omitted).

In determining the validity of a forum-selection clause, inconvenience and public policy are not to be considered categorically, but rather as part of a multi-factor analysis familiar in the § 1404(a) context. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988). "Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs." Id. "The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" Id.; see Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015) (considering factors including "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice").

The court begins with consideration of North Carolina's strong public policy against forum-selection clauses, further emphasized in the context of real property improvement contracts, as here. In particular, North Carolina law provides that "any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state <u>is against public policy and is void and unenforceable</u>." N.C. Gen. Stat. § 22B-3 (emphasis added). It further provides that: "A provision in any contract, subcontract, or purchase order for the improvement of real property in this State, or the providing of materials therefor, <u>is void and against public policy</u> if it makes the contract, subcontract, or purchase order subject to the laws of another state, or provides that the exclusive

9

forum for any litigation, arbitration, or other dispute resolution process is located in another state." N.C. Gen. Stat. Ann. § 22B-2 (emphasis added).

While this North Carolina public policy is not dispositive of the analysis, it is nonetheless a clear factor weighing against enforcement of the forum-selection clause in this case. See Allen, 94 F.3d at 928; Stewart, 487 U.S. at 30. Amplifying the North Carolina public policy interest in the context of construction disputes, the Miller Act itself expresses a federal public policy in favor of venue at the place of the federal construction project giving rise to Miller Act jurisdiction. See 40 U.S.C. § 3133(b)(3)(B) (providing that a civil action under the Miller Act "must" be brought in the "district in which the contract was to be performed and executed"). Again, while the Miller Act venue provision is not determinative to the analysis, it is significant when considered in combination with the North Carolina public policy in the same context.

Further weighing against enforcement of the forum-selection clause in this case is the status of the third claim by plaintiff against defendant FIC under the payment bond. Although the subcontract references FIC in the forum-selection provision, there is no mention of the payment bond containing any forum-selection provision, either as represented in the complaint or the instant motion. (See, e.g., Compl. ¶ 9). Thus, venue for this third claim must be in this district, pursuant to § 3133(b)(3)(B). Accordingly, the § 1404(a) factors reflecting the interests of justice, including efficiency of court proceedings, convenience of the parties, and interest in having all disputes by the parties resolved by the same court, weigh against enforcement of the forum-selection clause in the subcontract.

Additional factors weighing against enforcement of the clause are centered around the location of the project in North Carolina and plaintiff's presence in North Carolina. Any examination

of the premises will take place in North Carolina. Defendant Sauer came into North Carolina to bid and work on the project. Plaintiff is based in North Carolina and chose this logical forum to litigate the instant dispute. Defendants do not dispute any of these factors weighing against enforcement of the clause, where they filed no reply in response to plaintiff's assertion thereof.

Under the circumstances here, the court also takes into account the ambiguous language of the forum-selection clause, even if that ambiguity is not fatal to its enforcement as set forth in the court's analysis in section B.2.a., herein. Where it is not clear that the parties unequivocally and expressly sought to require venue for all claims in the Middle District of Florida, to the exclusion of all other locations in Florida or the United States, the court finds additional reason to forego enforcement of the clause.[3]

In contrast to the foregoing factors weighing against enforcement of the clause, the court recognizes factors favoring its enforcement. Defendant Sauer's office is located in Jacksonville, Florida, as noted on the face of the subcontract. The subcontract provides that pre-suit claims must be directed to defendant Sauer's office at that address. The parties are sophisticated business entities who are capable of freely entering into a contract at arms length. However, other than the forum-selection clause and the fact that Sauer has an office in Florida, this action bears no connection to Florida.

In sum, the factors in favor of enforcement of the forum-selection clause are heavily outweighed by the factors against its enforcement. Plaintiff has made "a clear showing," unrebutted by defendants, that the forum-selection clause is "unreasonable under the circumstances." <u>Allen</u>, 94 F.3d at 928.

---

[3] In so holding, the court expresses no opinion whether, in another case involving a clear and unequivocal exclusive forum-selection clause, the balance of factors may weigh in favor of its enforcement.

Cases cited by defendants in support of enforcement of the forum-selection clause are inapposite and unpersuasive under the circumstances presented. For example, defendants cite an unpublished district court decision from the Middle District of North Carolina transferring a Miller Act case pursuant to a forum-selection clause. There, however, the plaintiff stated in opposition to motion to dismiss that it "does not object to the Sureties' request to transfer venue to the District of Maryland" in accordance with a forum-selection clause, which clearly granted exclusive jurisdiction to the "Courts of Maryland." U.S. ex rel. Coken Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, No. CIV. 103CV00222, 2003 WL 22937731, at **1, 3 (M.D.N.C. Dec. 2, 2003). As a result, the court dispensed with any analysis of § 1404(a) factors. Id. at * 3 & n. 3. The case stands only for the now-settled proposition, recognized above, that a motion to dismiss under 12(b)(3) is the improper vehicle for enforcing a forum-selection clause. Id. at *2.

Defendants also cite to an unpublished decision by this court, adopting on clear error review a memorandum and recommendation of a magistrate judge to enforce a forum-selection clause to transfer an action to North Carolina county court. There, however, as in Coken, "neither party argue[d] that the forum selection clause . . . [was] unenforceable," and the court saw "no independent problem with the clause." Match Factors, Inc. v. Mickey B. Henson Enterprises, Inc., No. 4:10-CV-00062-FL, 2011 WL 1101363, at *7 (E.D.N.C. Mar. 1, 2011), report and recommendation adopted, No. 4:10-CV-62-FL, 2011 WL 1081980 (E.D.N.C. Mar. 23, 2011). Nor was there any issue with North Carolina public policy against forum-selection clauses, or any issue with the federal Miller Act venue provision, as here. Id. Thus, Match Factors is inapposite.

In sum, the purported forum-selection clause in the subcontract is both unenforceable and invalid in light of the totality of the circumstances. Therefore, the court declines to transfer venue

to the Middle District of Florida, and defendants' alternative motion to transfer venue is denied.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss for improper venue, or, in the alternative, to transfer venue (DE 17) is DENIED. Management of this case shall continue in accordance with the court's January 7, 2019, case management order.

SO ORDERED, this the 25th day of April, 2019.

LOUISE W. FLANAGAN
United States District Judge